FILED

2020 May-13  AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JEROME REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   5:18-cv-01733-LCB-JEO |
| | ) | |
| NEIKO WHITE AND KESSY BELL, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

The plaintiff filed a *pro se* complaint and amended complaint seeking monetary damages or injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Docs. 1 & 8).  The plaintiff names the following defendants in the amended complaint: Sergeant Neiko White and Officer Kessy Bell.  (*Id.* at 2). The plaintiff seeks monetary damages.  (*Id.* at 5).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Procedural History

On September 20, 2019, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations.  (Doc. 18).  The undersigned advised the defendants that the special

report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*).

On January 30, and February 11 and 14, 2020, the defendants filed a special report, supplemented by affidavits and/or other evidence. (Docs. 28, 30, 32). On February 11, 2020, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff that he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 31). The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). That deadline has expired and the court has received no response from the plaintiff.

This matter is now before the court on the defendants' motion for summary judgment.

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a

light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*,

3

786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III. Summary Judgment Facts

The plaintiff attests that around 10:30 a.m. on December 11, 2017, Sergeant Neiko White and Officer Kenny Bell kicked, punched, and beat him with sticks while he was handcuffed, "helpless and unable to defend" himself.  (Doc. 8 at 4-5).[1] He declares the defendants' use of excessive force caused him to suffer a fractured right ring finger, a black eye, and bruised ribs, legs, and arms.  (*Id.*).  Defendants White and Bell deny the plaintiff's allegations.  (Docs. 28-2 & 28-3).

The records produced by the defendants shed more light on the events occurring before, during, and after the incident.  During his I&I interview concerning this incident, the plaintiff stated that he asked defendant White if he could speak to the warden as White was escorting him and another inmate, but White said "come on boy" and cursed at him.  (Doc. 30-2 at 11-12).  The plaintiff told White that he

---

[1] The plaintiff testifies Nurse Blaylock witnessed the attack and defendant White reported medical staff was present during the altercation (doc. 8 at 5, doc. 30-2 at 23), but no declaration from medical staff who witnessed the event has been filed.  Also, the plaintiff attests the incident was recorded on video camera (doc. 8 at 5), but when he and defendant Bell were interviewed by ADOC Investigations & Intelligence ("I&I") Agent Bradley Arledge, both stated that there are no video cameras in the infirmary room where the incident occurred, (doc. 30-2 at 10, 19).

was a grown man and White cursed at him again and choked him while handcuffed. (*Id*.). The plaintiff then told White to take him to the Health Care Unit ("HCU") for a body chart. (*Id*. at 11).[2] In the infirmary, White called defendant Bell and while the plaintiff was sitting on the infirmary bed with his hands cuffed behind his back "they jumped on me, punching me, [kicking me in the face], and stuff." (Doc. 30-2 at 10-14).[3] The plaintiff also stated the defendants hit him with sticks while he was on the floor and tried to put a baton in his rectum. (*Id*. at 11). As a result of the beating, he had a swollen eye, "messed up" hand, "[l]iver and stuff busted," and a "fractured rib." (*Id*. at 10). The plaintiff claimed during the I&I investigation that the defendants beat him in retaliation for an incident he had with a female officer two days earlier; she (the officer) had accused him of acting inappropriately with another worker and she sprayed a can of mace in his cell. (*Id*. at 9).[4]

According to defendant White however, immediately prior to the HCU incident the plaintiff refused orders to return to his segregation cell, cursed at him, and asked to speak to the warden. (Doc. 28-1 at 1, 3). When White told the plaintiff

---

[2] The plaintiff does not sue Sergeant White for this event.

[3] The plaintiff further stated that he "beat" a disciplinary for failure to obey a direct order that Sgt. White initiated to cover up the assault. (Doc. 30-2 at 12). However, the hearing officer found the plaintiff not guilty "due to the procedural violation of the hearing being held more than 10 days after the disciplinary serve date" and not because any substantive evidence. (Doc. 28-1 at 7).

[4] The plaintiff does not claim in the amended complaint that the defendants assaulted him in retaliation for the incident with the female officer.

to file a request slip, the plaintiff wrapped his legs around White's legs in an attempt to wrestle him to the ground. (*Id*.). White placed the plaintiff against the fence to stop the aggression and then escorted the plaintiff to the HCU. (*Id*.). White moved the plaintiff's handcuffs to the front in the HCU because the nurse had to check his blood pressure. (Doc. 30-2 at 23). At the time the plaintiff was still "crying" and "cutting up" and "cursing," so White called defendant Bell. (*Id*.).

Defendants Bell and White reported that while the plaintiff sat on the exam the table he kicked at White. (*Id*. at 16, 23). White asked the plaintiff to stop but the plaintiff kicked him in the shin and White hit the plaintiff once on the leg with his baton. (*Id*. at 16, 25-26). White said he and Bell took the plaintiff to the ground because medical staff was in the room and they did not want him to use his handcuffs as a weapon. (*Id*.). The defendants held the plaintiff on the ground until he calmed down somewhat and then proceeded with the exam, though he continued act "irate," "cursing" and "clowning." (*Id*. at 27). Nurse Borden recorded the plaintiff as stating, "I will handle the matter with this body chart." (Doc. 30-2 at 44). The only injury noted was swelling to the plaintiff's left eye. (*Id*.).

Additional institutional records after the event show that the plaintiff started a fire in his segregation cell as soon as he was returned to it. (Doc. 30-2 at 51-52). Officers escorted him back to the HCU, where he was examined and several body charts were completed between 11:55 a.m. and 12:01 p.m. (*Id*. at 47-50). Though

the plaintiff stated, "they hit me on my legs and neck," none of the charts reflect any injury other than swelling to his left eye. (*Id*.). Around 7:50 p.m., the plaintiff set another fire in his cell, which precipitated another visit to the HCU. (*Id*. at 41-42). At that time he complained that his "body hurt" and that he felt pain on his left calf at an 8 out of 10 pain level. (*Id*. at 40). Nurse Rush noted a bruise to his left eye and that his right ring finger was disfigured. (*Id*.). Around 11 p.m., the plaintiff felt suicidal, received a mental health examination in the HCU, and then returned to his cell. (*Id*. at 39). Defendant White reported that the plaintiff had caused problems for several days because he did not want to be in the segregation unit due to "an altercation with somebody dealing with some dope. And he had actually swallowed some dope so that was a lot of the reason why he was acting so irate, he had swallowed a good bit of Ice." (*Id*. at 26).

## IV. Analysis

### A.    Sovereign Immunity

To the extent the plaintiff sues the defendants in their official capacity his claim is due to be dismissed. A law "suit against the State [of Alabama] and its [agencies for monetary damages] is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*,

302 U.S. 292 (1937)). No such consent can "be given under Art. I, Sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." *Id.*; *see also*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the state itself." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Sergeant White and Officer Bell are employees of the Alabama Department of Corrections, which is an agency of the State of Alabama. Therefore, the Eleventh Amendment bars the plaintiff's official capacity claim against defendants White and Bell.

## B.    Qualified Immunity

The defendants asserts the affirmative defense of qualified immunity in connection with plaintiff's claim of excessive force. (Doc. 28 at 5-6).

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*. *See Johnson. v. Breeden*, 280 F.3d 1308, 1319 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. *Id.* The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). Accordingly, because

qualified immunity is determined by whether the plaintiff has presented sufficient facts to survive the defendants' motion for summary judgment as to his excessive force claim, the remainder of this report will address that aspect of the case.

## C.    Eighth Amendment Excessive Force

The plaintiff's excessive force claim against defendant is governed by the Eighth Amendment's Cruel and Unusual Punishments Clause.   The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment

are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22).

"The use of force must stop when the need for it to maintain or restore discipline no longer exists." *Skrtich*, 280 F.3d 1295, 1304 (11th Cir. 2002) (citing *Whitley*, 475 at 320-21). Therefore, if a non-compliant inmate has been restrained by guards and no longer poses a threat, he "cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain." (*Id.*).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id*. at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986).

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a

10

sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

Even though the defendants dispute the version of events presented by the plaintiff, at this stage of the proceedings the court must construe the facts in the light most favorable to the plaintiff and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). Moreover, where a conflict exists between the parties' allegations or evidence, "the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Applying the *Whitley* factors to the above facts and inference, and in a light most favorable to the plaintiff, he posed no threat to the defendants nor could they have reasonably perceived one as he sat on an infirmary bed with his hands cuffed behind his back. Thus, factors one through four weigh in the plaintiff's favor. As for the final factor, the evidence shows the plaintiff suffered minor bruising and perhaps a broken or dislocated finger. Nonetheless, "[t]he 'core judicial inquiry'" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). A reasonable jury could find that the defendants used force

11

against the plaintiff out of malice, not good-faith, because the plaintiff had demanded to be taken to the infirmary after defendant White choked him. Accordingly, defendants' motion for summary judgment is due to be denied.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the motion for summary judgment be **DENIED**. The undersigned **FURTHER RECOMMENDS** that the excessive force claim against the defendants be **REFERRED** to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those

12

same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

**DATED** this 13th day of May, 2020.

John E. Ott
_____
**JOHN E. OTT**
Chief United States Magistrate Judge

13